09-3150-cr
United States v. Heras

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: May 28, 2010                              Decided: June 18, 2010)

Docket No. 09-3150-cr

UNITED STATES OF AMERICA,

*Appellant,*

—v.—

NELSON HERAS,

*Defendant-Appellee.*

_____

Before:

RAGGI, LYNCH, and WALLACE,* *Circuit Judges.*

_____

Appeal from a judgment of acquittal entered after trial in the United States District Court for the Eastern District of New York (Charles P. Sifton, *Judge*), based on a determination that the evidence was insufficient as a matter of law to permit the jury to find that defendant had the intent to distribute narcotics necessary to convict for substantive and

---

* Circuit Judge J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

conspiratorial violations of 21 U.S.C. § 841(a)(1).

VACATED AND REMANDED.

CHARLES N. ROSE, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, *on the brief*), *for* Benton J. Campbell, United States Attorney, Eastern District of New York, Brooklyn, New York, *for Appellant*.

JUSTIN LEVINE, Bronx, New York, *for Appellee*.

REENA RAGGI, *Circuit Judge*:

The United States appeals from a judgment of acquittal entered in favor of defendant Nelson Heras in the United States District Court for the Eastern District of New York (Charles P. Sifton, *Judge*). See Fed. R. Crim. P. 29(c)(2). Although a jury found Heras guilty of both conspiracy to possess and aiding and abetting an attempt to possess with intent to distribute 500 grams or more of cocaine, see 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II), 846; 18 U.S.C. § 2, the district court concluded that the trial evidence was insufficient as a matter of law to establish the specific intent element of these crimes, see United States v. Heras, No. 09-CR-86, 2009 WL 1874373 (E.D.N.Y. June 29, 2009). The district court acknowledged that the evidence satisfactorily established that, on January 25, 2009, Heras drove Simon Correa, whom Heras knew to be a drug dealer, to a hotel near John F. Kennedy

2

International Airport, knowing that the purpose of the trip was for Correa to take possession of a quantity of drugs. The court further acknowledged that "[w]hen a drug trafficker acquires drugs it may be presumed that the trafficker will distribute them." Id. at *5. Nevertheless, citing two footnotes in our opinion in United States v. Nelson, 277 F.3d 164, 197 n.37, 198 n.40 (2d Cir. 2002), the district court concluded that more specific evidence of Heras's own intent to distribute the drugs at issue was necessary to support conviction in light of defendant's statement to federal agents denying any stake in the January 25 drug deal.

Nelson does not, in fact, support setting aside the verdict in this case. Nothing in that opinion alters the well-established rule that, on a sufficiency challenge, the evidence must be viewed in the light most favorable to the government. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Aguilar, 585 F.3d 652, 656 (2d Cir. 2009). This rule required the district court, as it requires us, to assume that the jury did not credit Heras's self-serving protestation that he had "nothing to do" with Correa's drug deal. Trial Tr. at 83; see United States v. Burden, 600 F.3d 204, 214 (2d Cir. 2010). In any event, even if Heras, an acknowledged marijuana dealer, viewed the January 25 cocaine transaction as Correa's alone, that hardly provides an innocent explanation for his actions in facilitating Correa's attempted drug possession, much less does it signal that Heras did not know that the specific intent of such possession was distribution.

3

In sum, we conclude that the evidence was sufficient to permit a jury to infer from Heras's knowledge that Correa was a drug dealer seeking to take possession of a quantity of drugs and Heras's knowing effort to further and facilitate that possession that Heras necessarily adopted the specific intent underlying the attempted possession, namely, distribution of any acquired drugs. Accordingly, we vacate the judgment of acquittal and remand the case to the district court with instructions that it reinstate the jury verdict, proceed to sentencing, and enter a judgment of conviction.

## I. **Background**

### A. The Attempted Possession of Cocaine

On January 24, 2009, federal agents at Kennedy Airport seized almost three pounds of cocaine from Terry Pannell, a passenger arriving in the United States from Bogota, Colombia: 1,102 grams of 76.6% pure cocaine hidden in the lining of Pannell's briefcase, and 311.5 grams of 77.58% pure cocaine hidden in Pannell's leather portfolio.

Pannell agreed to cooperate with the agents in making a controlled delivery of the seized cocaine at a nearby Holiday Inn. Toward that end, on January 24 and 25, 2009, Pannell placed monitored telephone calls to both his Colombian source of supply and his United States contact. In these calls, Pannell was instructed to deal with a man named "Primo," later identified as Simon Correa, also known as "Luichi."

4

At approximately 10:30 p.m. on January 25, 2009, federal agents observed Correa arrive at the Holiday Inn in a minivan and proceed to Pannell's room. In a recorded conversation, Pannell asked Correa if he had brought the money to pay for the drugs. Correa replied that he had not and that his "orders" were "to take everything" – an apparent reference to both the briefcase and portfolio – and to return with the money the following day. Controlled Delivery Tr. at 1. Pannell stated that he was told to give Correa only the smaller quantity of cocaine in the portfolio and to wait for Correa to make payment before giving him everything. Correa agreed, stating that he would be back "in a matter of an hour" with the money. Id. at 2. In fact, as soon as Pannell gave Correa the portfolio, federal agents placed Correa under arrest.

B.     Heras's Statements to Federal Authorities

Upon learning of Correa's arrest, other federal agents surveilling the Holiday Inn parking lot proceeded to the minivan in which Correa had arrived at the hotel. The van's engine and lights were turned off and two men were sitting inside: Heras in the driver's seat and Jorge Rodriguez in the passenger's seat. The men were not formally arrested, but they were brought to a nearby location for questioning.[1]

---

[1] Rodriguez was never arrested in connection with the January 25, 2009 drug transaction and, thus, we discuss him no further in this opinion.

After providing biographical information, Heras asked the agents what was going on. Advised that a serious federal crime had been committed involving the importation of narcotics, Heras stated: "'Whoa, whoa, whoa, whoa, whoa. Whatever happened up there, that has to do with Simon. That has nothing to do with me.'" Trial Tr. at 83 (testimony of Agent Robert Etienne regarding Heras's statement).[2] At this point, the agents advised Heras of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). Heras orally acknowledged that he understood his rights, and he stated that he wanted to cooperate and was willing to speak without an attorney.

Heras told the agents he was at the Holiday Inn "to drop off a friend named Luichi," i.e., Correa. Trial Tr. at 84. Heras initially denied any knowledge of or involvement in a drug deal, asserting that he understood Correa to be going to the hotel "to meet a girl," and explaining that he was waiting outside for a phone call telling him that Correa was "safe." Id. at 85. When agents challenged the plausibility of this account, Heras acknowledged that Correa was a drug dealer and that he knew Correa was at the hotel to pick up drugs. Although Heras denied knowing that purpose when he picked Correa up in Manhattan, Heras admitted that the drug deal was "openly discussed" during the drive to Queens. Id. at 86. At one point, Heras claimed that he was not going to permit Correa to get back in his car, a

___

[2] Another agent present in the interview room recalled that Heras stated: "'Whoa, whoa, you know. I don't know. This is Simon's,'" or, "'This is Luichi's deal.'" Trial Tr. at 125.

6

statement at odds not only with Heras's waiting in the parking lot while Correa was in the hotel, but also with Heras's subsequent acknowledgment that he expected Correa to compensate him for his assistance on January 25 as he had in the past: by connecting Heras with suppliers for his own marijuana distribution business.

C.     Telephone Contact Between Heras and Correa

Telephone records were introduced at trial showing nine calls between Correa and Heras made between 8:29 p.m. on January 24, 2009, and 9:49 p.m. on January 25, 2009. Although the content of these calls was generally unknown, one "call" from Correa to Heras at 5:08 p.m. on January 25 was in fact a text message that, translated from Spanish into English, stated: "'What's up? Dial me. It's your cousin. Don't abandon me.'" Id. at 131.

D.     The Guilty Verdict and Judgment of Acquittal

On April 29, 2009, after a three-day trial, a jury found Heras guilty of conspiracy to possess 500 grams or more of cocaine with intent to distribute, and attempt to possess the same quantity of cocaine with intent to distribute. With respect to the attempt count, the government had argued that Heras was guilty on a theory of aiding and abetting. See 18 U.S.C. § 2.

Pursuant to Fed. R. Crim. P. 29(c), Heras moved for a judgment of acquittal on both counts, arguing that the evidence was insufficient as a matter of law to support the jury verdict. The district court agreed, and on June 29, 2009, granted the defense motion. See

7

United States v. Heras, 2009 WL 1874373. Specifically, the district court found the evidence insufficient to satisfy the specific intent element of a 21 U.S.C. § 841(a)(1) possession crime (whether substantive or inchoate), i.e., an intent to distribute the possessed drugs. See id. at *5-6. Because we discuss relevant aspects of the district court's reasoning in the next section of this opinion, we do not detail it here.

## II.    Discussion

### A.    Standard of Review

We review a challenged judgment of acquittal notwithstanding a guilty verdict de novo, applying the same standard of constitutional sufficiency as the district court. See United States v. Hawkins, 547 F.3d 66, 70-71 (2d Cir. 2008); United States v. Florez, 447 F.3d 145, 154 (2d Cir. 2006). A defendant challenging the sufficiency of the evidence "bears a heavy burden," United States v. Aguilar, 585 F.3d at 656, because a reviewing court must sustain the jury's guilty verdict if "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Jackson v. Virginia, 443 U.S. at 319 (emphasis in original). "Under this stern standard, a court, whether at the trial or appellate level, may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." United States v. MacPherson, 424 F.3d 183, 187 (2d Cir. 2005) (internal quotation marks, citations, brackets, and ellipsis

8

omitted).  Rather, a court may enter a judgment of acquittal only if "the evidence that the defendant committed the crime alleged is nonexistent or so meager that <u>no</u> reasonable jury could find guilt beyond a reasonable doubt."  Id. (internal quotation marks omitted) (emphasis added).

B.      The Specific Intent Element of § 841(a)(1) Possession Crimes

Title 21 U.S.C. § 846 makes it a crime for any person to "attempt[] or conspire[] to commit any offense defined in this subchapter."  Among the offenses defined in 21 U.S.C. § 841(a)(1) is the knowing possession of a controlled substance "with intent to . . . distribute."  This is in contrast to 21 U.S.C. § 844, which makes it a lesser offense to possess a controlled substance without regard to its intended disposition.

Thus, to convict Heras of conspiring or attempting to possess cocaine in violation of § 841(a)(1), the government was required to prove that he acted with the specific intent that the cocaine at issue be distributed.  See, e.g., United States v. Torres, 604 F.3d 58, 65 (2d Cir. 2010) (observing that to convict defendant of § 841(a)(1) conspiracy, "the government 'must prove at least the degree of criminal intent necessary for the substantive offense'" (quoting United States v. Feola, 420 U.S. 671, 686 (1975))); United States v. Ogando, 547 F.3d 102, 107-08 (2d Cir. 2008) (noting that § 841(a)(1) conspiracy and aiding and abetting convictions "require[] a showing of specific intent"); see generally United States v. Garcia, 587 F.3d 509, 515 (2d Cir. 2009) (holding that, in conspiracy cases, government must show that defendant

9

"knowingly engaged in the conspiracy with the specific intent to commit the offense[] that [is] the object[] of the conspiracy" (internal quotation marks omitted)).

Proof of such intent need not have been direct. The law has long recognized that criminal intent may be proved by circumstantial evidence alone. See United States v. MacPherson, 424 F.3d at 189-90; United States v. Nelson, 277 F.3d at 197; United States v. Salameh, 152 F.3d 88, 143 (2d Cir. 1998) ("[A]s a general rule most evidence of intent is circumstantial."); see also United States v. Torres, 604 F.3d at 67 ("[C]onspiracies are undertakings in secret and often cannot be proven except through the use of circumstantial evidence . . . ."). Nor did such proof have to demonstrate any agreement that Heras himself would participate in the distribution, as well as in the acquisition, of the cocaine at issue. "One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense." Salinas v. United States, 522 U.S. 52, 65 (1997); see also United States v. Reifler, 446 F.3d 65, 96 (2d Cir. 2006) (holding that defendant may be convicted of aiding and abetting "where the government proves that the underlying crime was committed by a person other than the defendant"); United States v. Frampton, 382 F.3d 213, 223 (2d Cir. 2004) (holding that conviction for aiding and abetting depends on defendant's "specific intent of facilitating or advancing the principal's commission of the underlying crime").

In this case, a jury could reasonably infer Heras's intent to distribute from evidence indicating that he knew that the object of the charged drug possession was Correa's

10

distribution of the contraband and that, with that knowledge, he agreed to facilitate the crime. As the Supreme Court explained in Salinas, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion." 522 U.S. at 65 (emphasis added).

To be sure, mere knowledge of a criminal objective, such as the intended distribution of possessed drugs, is not enough by itself to make a person a conspirator or an aider and abettor. See United States v. Hawkins, 547 F.3d at 74; United States v. Frampton, 382 F.3d at 223. But when a person possessing such knowledge agrees to facilitate or actually facilitates the crime, a jury may reasonably infer from this combination of knowledge and action that the defendant has adopted the known goal of the crime as his own. See Salinas v. United States, 522 U.S. at 65; United States v. Santos, 541 F.3d 63, 73 (2d Cir. 2008) (observing that in conspiracy case jury may "infer intent and agreement from knowledge," particularly in context of defendant's interested cooperation or stake in scheme); United States v. Hamilton, 334 F.3d 170, 180 (2d Cir. 2003) (holding that aiding and abetting liability requires proof that defendant "knew of the crime" and "acted with the intent to contribute to [its] success").

With these principles in mind, we consider the evidence supporting the jury verdict against Heras.

C.    The Trial Evidence Was Sufficient To Permit a Jury To Find that Heras Acted with the Specific Intent To Facilitate Drug Distribution

To support Heras's conviction for conspiracy and attempt, the evidence had to be sufficient to permit a reasonable jury to conclude both that (1) Heras knew that Correa sought to take possession of drugs on January 25, 2009, in order to distribute them, and (2) with such knowledge, Heras agreed to and actually facilitated that criminal objective. The district court determined that the evidence was not sufficient in either respect because, even though it showed that "Heras learned during the car ride that Correa was going to a place to pick up drugs, . . . there was no evidence that Heras knew of Correa's plan for what to do with the drugs after acquiring them or that Heras intended to further that part of the criminal venture." United States v. Heras, 2009 WL 1874373, at *5. We are obliged to disagree with this assessment of both the record evidence and the law.

As to the former, powerful evidence supported a jury inference that Heras knew what Correa would do with any drugs acquired on January 25, 2009: Heras told federal authorities Correa was a drug dealer. As the district court itself observed, "[w]hen a drug trafficker acquires drugs it may be presumed that the trafficker will distribute them." Id.; cf. United States v. Martinez, 54 F.3d 1040, 1043-44 (2d Cir. 1995) (identifying sufficient evidence of intent to distribute where defendant "was not a user" yet possessed drugs and items related

12

to drug trafficking). That presumption would only have been reinforced in Heras's mind by the circumstantial evidence in this case. Notably, Correa had Heras travel from Manhattan to Queens to effect possession of the drugs, a greater effort than is generally associated with the acquisition of a personal-use quantity in New York City. Further, the Queens site for the anticipated drug transfer – a hotel near the city's major international airport – strongly suggested that the contraband at issue had recently been imported, another circumstance more indicative of a drug quantity intended for distribution rather than personal use. Finally, even without knowing the content of the January 24-25 telephone calls between Correa and Heras, the frequency of the calls and the coincidence of their occurrence – all placed in the interval between the importation of the three pounds of cocaine into the United States and the Correa-Heras trip to Queens to take possession of those drugs – are more reflective of a jointly undertaken scheme to acquire drugs for distribution rather than for personal use.

To be sure, no evidence was introduced at trial indicating that Heras knew the particulars of Correa's distribution plan for any drugs acquired on January 25, 2009. But a defendant need not know all the details of a criminal scheme to be guilty of conspiracy or aiding and abetting. See Blumenthal v. United States, 332 U.S. 539, 557 (1947); United States v. Huezo, 546 F.3d 174, 179-80 (2d Cir. 2008); United States v. Reifler, 446 F.3d at 96. Heras knew that Correa was a drug dealer and that he was traveling inter-borough to take possession of a quantity of drugs. These facts, together with the other circumstantial

13

evidence cited, were sufficient to permit a reasonable jury to find that Heras knew that the object of Correa's crime was to distribute any acquired drugs.

The sufficiency of the evidence to support a finding of such knowledge is fatal to the district court's second conclusion that the evidence was insufficient, as a matter of law, to demonstrate Heras's intent "to further [the distribution] part of the criminal venture." United States v. Heras, 2009 WL 1874373, at *5. As previously observed, if a defendant, with knowledge that the object of attempted drug possession is distribution, thereafter joins in and attempts to further that drug possession, a jury may reasonably find from that combination of knowledge and action that the defendant adopted the underlying intent to distribute as his own. See Salinas v. United States, 522 U.S. at 65 (referencing defendant's adoption of conspiracy's goals); United States v. Santos, 541 F.3d at 73 (holding that intent and agreement may be inferred from defendant's knowledge of conspiracy and actions in furtherance of its object); United States v. Clark, 765 F.2d 297, 303 (2d Cir. 1985) (stating that person with knowledge of criminal scheme was properly convicted of aiding and abetting where evidence supported inference that he "shared the intent" of principal (internal quotation marks omitted)).

The district court appears initially to have reached the same conclusion when it alluded to the law's general willingness to permit a jury to infer that a defendant intends the ordinary consequences of his action. See United States v. Heras, 2009 WL 1874373, at *5.

14

Thus, a defendant who assists a confederate's attempted possession of drugs, knowing that the confederate intends to distribute them, can reasonably be found to intend the distribution that he knows will be the ordinary consequence of any assistance he gives the scheme. The district court nevertheless concluded that Heras's actions in facilitating the attempted possession of drugs by a known drug dealer were insufficient to support an inference of an intent to distribute those drugs in light of Heras's "innocent" explanation for his actions, specifically, his statement to federal agents that "'[w]hatever happened up there, that has to do with Simon. That has nothing to do with me.'" Id. at *5-6 (quoting Trial Tr. at 83). Citing United States v. Nelson, 277 F.3d at 197 n.37, 198 n.40, the district court concluded that in the face of such exculpatory evidence, more than a presumption of intended ordinary consequences was necessary to demonstrate that Heras conspired or attempted to possess drugs with the requisite specific intent to distribute. The conclusion is unwarranted for several reasons.

First, it misconstrues the point made in footnote 40 of our Nelson decision.[3] The offense charged in Nelson, a violation of 18 U.S.C. § 245(b)(2)(B) (prohibiting discriminatory injury, intimidation, or interference with enjoyment of state-provided facility),

---

[3] We need not separately address footnote 37 of Nelson, also cited by the district court, because that footnote simply clarified that defendants in that case challenged the "naked inference" contained in an ordinary consequences jury instruction, even though "no evidence contradict[ed]" defendants' presumed intent. 277 F.3d at 197 n.37.

15

required proof that defendants had the specific "intent to act against the victim on account of her using public facilities." 277 F.3d at 189. Referencing the ordinary consequences presumption, Nelson concluded "that evidence that a victim was attacked while actually engaged in a protected activity would ordinarily be enough to send the question of activities-based intent to a jury, because such facts would afford the basis for an inference that the assailant did intend to interfere with the protected activity." Id. at 198 (internal quotation marks and brackets omitted). In footnote 40, Nelson reiterated this point in rejecting defendants' sufficiency challenge, observing that "where a jury infers intent by deciding that a given defendant meant to bring about the consequences of his actions, that defendant cannot (without pointing to countervailing evidence that the jury ignored) unseat this finding by challenging the sufficiency of the evidence." Id. at 198 n.40. This statement indicates only that no sufficiency challenge to a finding of intent based on an ordinary consequences presumption can be mounted in the absence of countervailing evidence. It does not hold, as the district court may have thought, that any proffer of countervailing evidence renders an ordinary consequences presumption insufficient as a matter of law to support a finding of intent. Plainly some actions may support presumptions of intent more forcefully than others. Similarly, some countervailing evidence may rebut the presumption more conclusively than other evidence. In short, Nelson establishes no bright line rule of insufficiency such as the district court applied here.

16

Second, Nelson does not signal any departure from the established principle that, on a sufficiency challenge, a reviewing court must view the evidence in the light most favorable to the prosecution. See United States v. Burden, 600 F.3d at 214 (crediting all inferences drawn in government's favor).[4] In this case, that principle required the district court to assume that the jury considered and discredited Heras's protestation that he had "nothing to do" with the drug transaction that Correa was attempting to consummate in the hotel room. Trial Tr. at 83; see United States v. Payne, 591 F.3d 46, 60 (2d Cir. 2010) ("Assessments of witness credibility and choices between competing inferences lie solely within the province of the jury."). Such an assumption requires little effort in this case. Heras's quoted statement was made at a time when he was plainly lying to the agents, telling them that he brought Correa to the Holiday Inn to meet a girl. Only later did he admit knowing that Correa was a drug dealer and that the trip from Manhattan to Queens was for Correa to take possession of drugs. When we assume that the jury discredited Heras's attempt to distance himself from Correa's drug deal, we are compelled to conclude that the jury could reasonably infer from evidence signaling Heras's knowledge of Correa's distribution objective and the assistance

---

[4] In fact, Nelson reiterated the principle: "In addressing [a sufficiency] challenge, 'we must consider the evidence in the light most favorable to the government.' . . . And we 'must credit every inference that could have been drawn in the government's favor.'" 277 F.3d at 195 (quoting United States v. Gore, 154 F.3d 34, 40 (2d Cir. 1998), and United States v. Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996)).

17

Heras provided Correa in taking possession of the drugs that Heras acted with the requisite specific intent to distribute.[5]

Third, even if the jury did not discredit Heras's initial statement to the authorities in its entirety, the totality of the evidence was sufficient to permit the jury to find Heras guilty of the charged crimes. Heras drove a known drug dealer to a hotel, knowing that the purpose of the trip was for the dealer to take possession of a quantity of drugs. To the extent that was the limit of Heras's involvement, he may have thought that any possession acquired in the hotel room and any distribution occurring thereafter was Correa's affair and had "nothing to

_____

[5] These circumstances are distinguishable from those in United States v. Law, 528 F.3d 888 (D.C. Cir. 2008), also cited by the district court in support of its sufficiency conclusion. In Law, the D.C. Circuit ruled that "when faced with an innocent explanation sufficiently supported by the evidence to create a reasonable doubt" about defendant's intent to conceal the source of the funds at issue, "the Government's burden is to present evidence sufficient to dispel that doubt." Id. at 896 (emphasis added). The evidence supporting defendant's innocent explanation for mortgage payments charged as money laundering in Law could be found sufficient to raise a reasonable doubt, even by a reviewing court considering the record in the light most favorable to the government, because the evidence was undisputed: financial records showed that defendant profited by assuming responsibility for the mortgage payments. See id. (noting that transactions engaged in for present personal benefit and not to create appearance of legitimate wealth generally do not violate money laundering statutes). In such circumstances, the D.C. Circuit concluded that it was particularly important for the government to adduce evidence to dispel the doubt thus raised as to defendant's criminal intent "because of the fine line between laundering and merely spending illicit funds." Id. (observing that latter was insufficient to violate laundering statute). We need not here decide whether we would adopt Law's reasoning in similar circumstances. We note only that, in this drug trafficking case, defendant's protestation of innocence was entirely self-serving and, far from being supported by undisputed evidence, was undermined by the totality of the circumstances.

18

do" with him. The law, however, takes a different view. As already observed, a jury could reasonably infer that Heras knew that the ultimate object of Correa's intended possession was distribution. When, with that knowledge, Heras acted to further Correa's possession, Heras demonstrated a sufficient commitment to the success of the overall scheme to be found liable for the charged § 841(a)(1) crimes, even though his role was relatively minor. See United States v. Huezo, 546 F.3d at 180 (holding that "single act" may suffice to demonstrate involvement in criminal enterprise of substantial scope (internal quotation marks omitted)); United States v. Almanza, 225 F.3d 845, 846 (7th Cir. 2000) ("Anyone who agrees to join a criminal undertaking is a conspirator, and he is liable for all the criminal acts of the conspiracy that are foreseeable to him . . . regardless of how large or small his own role is." (citing, inter alia, Pinkerton v. United States, 328 U.S. 640, 646-47 (1946))); compare United States v. Pitre, 960 F.2d 1112, 1121-22 (2d Cir. 1992) (holding defendant liable for § 841(a)(1) drug conspiracy where jury could infer that he "was aware that he was transporting money to be used to purchase narcotics" and "acted intentionally and knowingly as a driver in furtherance of the charged narcotics conspiracy"), with United States v. Rodriguez, 392 F.3d 539, 544-48 (2d Cir. 2004) (acknowledging that lookouts may be liable for § 841(a)(1) conspiracy but reversing conviction where evidence was insufficient to show defendant "knew the specific nature of the conspiracy or underlying crime" (internal quotation marks omitted)), and United States v. Cruz, 363 F.3d 187, 197-99 (2d Cir. 2004)

19

(reversing conviction of lookout where "little evidence in the record . . . suggest[ed] that [defendant] knew of the specific crime . . . or that [he] intended to facilitate such a crime").

Further supporting that finding was Heras's admission that he expected that Correa would compensate him for his assistance, as he had in the past, by putting him in touch with suppliers for Heras's own marijuana operation. To be sure, if the anticipated compensation had depended on Correa's profitable sale of the acquired drugs, that would have given Heras an even greater stake in the conspiracy, providing still more powerful proof of his own intent that the drugs be distributed. See United States v. Desimone, 119 F.3d 217, 224 (2d Cir. 1997) (holding that "expectation of compensation from the profits of the cocaine sale . . . constituted proof of [defendant's] interest in furthering the goals of the conspiracy"). But anticipated compensation need not depend on the successful achievement of the criminal scheme to provide evidence supporting a jury inference that a defendant knows and has adopted the conspiracy's goals. See, e.g., United States v. Peltz, 433 F.2d 48, 51 (2d Cir. 1970) (inferring conspiratorial agreement where defendant rewarded co-conspirator by "procuring female company" for him). That is particularly so where, as here, a defendant indicates that he has previously received compensation in the form of assistance in his own drug distribution efforts from the known drug dealer whose distribution scheme defendant is charged with joining and assisting.

III.    **Conclusion**

20

To summarize, we conclude that the trial evidence, viewed in the light most favorable to the government, was sufficient to permit a reasonable jury to infer from Heras's admitted knowledge that Correa was a drug dealer seeking to take possession of drugs that (1) Heras knew the intent of the possession was drug distribution; and (2) when, with that knowledge, Heras agreed to and did facilitate the attempted possession, he adopted the intent to distribute necessary to support convictions for conspiring and attempting to violate 21 U.S.C. § 841(a)(1). The judgment of acquittal is therefore VACATED, and the case is REMANDED to the district court with instructions to reinstate the jury verdict, proceed to sentencing, and enter a judgment of conviction.

21