11-4805-cr
*United States v. Morales*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 11th day of December, two thousand and twelve.

PRESENT:

> JOSÉ A. CABRANES,
> REENA RAGGI,
> SUSAN L. CARNEY,
>
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                                No. 11-4805-cr

JOSE LUIS MORALES,

*Defendant-Appellant.*\*

---

**FOR DEFENDANT-APPELLANT:**          JOHN L. RUSSO (Michael D. Horn, *on the brief*), Law Offices of J.L. Russo, PC, Astoria, NY.

---

\* The Clerk of Court is directed to amend the caption as shown above.

**FOR APPELLEE:**                                    MICHAEL FERRARA (Brian R. Blais, Justin S. Weddle, *on the brief*), *for* Preet Bharara, United States Attorney for the South District of New York, New York, NY.

Appeal from a judgment of conviction by the United States District Court for the Southern District of New York (Denise Cote, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

In January 2011, police officers arrested defendant-appellant Jose Luis Morales after discovering him in an SUV that also contained, concealed behind a trap door, about eight kilograms of cocaine and $50,000 in cash. Following a jury trial, Morales was convicted of (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846, and (2) distribution and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A). The District Court sentenced Morales to concurrent terms of 121 months' imprisonment on both counts, along with five years' supervised release, a $17,500 fine, and a mandatory $200 special assessment.

On appeal, Morales raises three arguments. First, he argues that the evidence was insufficient to prove that he knew about the cocaine and cash concealed in the SUV's hidden compartment. Second, he argues that the District Court abused its discretion by admitting evidence that he was previously arrested in Texas after driving a vehicle in which the police discovered a similar concealed compartment containing cash. Lastly, Morales argues that the District Court abused its discretion by not holding an evidentiary hearing to determine whether a juror who was later recused for medical reasons had improperly communicated with an Assistant United States Attorney who was not assigned to work on this case. We assume the parties' familiarity with the facts and procedural history of this case.

## DISCUSSION

### A.

Morales first argues that the evidence presented at trial was insufficient to prove that he conspired with his codefendant, Juan Lugo, and knew about the cocaine and money hidden behind the trap door in the back of the SUV. The relevant legal standards are well-established. When reviewing a sufficiency challenge, we will uphold the judgments of conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979). This standard is "exceedingly deferential" to the jury's role as factfinder. *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008). A court "may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010). Accordingly, "[i]n considering such a challenge, we must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Chavez*, 549 F.3d 119, 124–25 (2d Cir. 2008) (internal citations, alterations, and internal quotation marks omitted); *see also Evans v. United States*, 504 U.S. 255, 257 (1992).

The government's case against Morales rested on circumstantial proof of both the conspiracy and his knowledge that drugs were in the SUV. As we have explained, "the *mens rea* elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom." *United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005). In fact, "[a] verdict of guilty may be based entirely on circumstantial evidence as long as the inferences of culpability drawn from the circumstances are reasonable." *Id.* at 190.

Here, the prosecution offered sufficient evidence to prove (1) Morales's participation in a conspiracy to distribute cocaine and (2) his knowledge that cocaine was located in the SUV. For instance, evidence offered at trial placed Morales in the SUV next to the secret compartment making movements suggesting that he was arranging items within that compartment. DEA Task Force Officer Anna Bedoya testified that she conducted surveillance at Lugo's home on the afternoon of January 4, 2011 and saw a man (later identified as Morales) sitting in the rear passenger seat of the SUV that entered the driveway around 1:30 p.m. Officer Bedoya testified that she saw, through her binoculars, Morales "reach for the floor of the back seat." App'x 627. After reaching toward the floor "for a few seconds or so," Morales then "reached over to his left across the back seat, towards the center or driver's side of the back seat." *Id.* at 628. After a couple of minutes, Morales got out of the SUV and "faced the rear seat again and then reached inside the back seat." *Id.* Morales leaned into the back area of the SUV for about six or seven minutes. *Id.* at 633. Later that afternoon, the police pulled over the SUV—in which Morales was riding in the passenger seat—and discovered in the secret compartment about eight kilograms of cocaine and $50,000 in cash. The secret compartment was located in the back of the SUV in the area where Morales had been reaching during Officer Bedoya's surveillance. From this testimony, the jury could reasonably have inferred that Morales was arranging or rearranging the contents of the secret compartment.

Adding to the evidence of Morales's culpability, the government showed that he lied to police officers following his arrest. For instance, Morales claimed that Lugo had picked him up earlier that day at his apartment on University Avenue near 175th Street in the Bronx but that he

3

"couldn't remember his [own] address." App'x 592. As it turns out, Morales actually resided on Briggs Avenue in the Bronx, and cell phone records presented at trial revealed that Lugo had in all likelihood picked up Morales in the vicinity of Briggs Avenue. Moreover, Morales told police officers that after picking him up, Lugo took him to his house in Bogota, New Jersey, where Officer Bedoya was surveilling the scene. Again, however, cell phone records belied Morales's claim, showing that the two men had actually driven the SUV in the opposite direction, toward a Ramada Inn located at 1000 Baychester Avenue in the Bronx.

Further demonstrating Morales's participation in a conspiracy and his knowledge that drugs were in the SUV, prosecutors offered evidence of Morales's near-constant communication with Lugo. Morales and Lugo contacted each other by cell phone at least 521 times between December 18, 2010, and January 4, 2011—corresponding to a rate of about 29 calls per day—including 204 calls of no duration. Morales's phone records also revealed suspicious text messages. For instance, in the early morning of January 4, 2011, Morales received a text message from someone who identified himself as "the one who knows the most" stating: "This has to be picked up at 8 a.m." App'x 943. Morales then received a message from the same number around 11:30 a.m. listing the address of the Ramada Inn on Baychester Avenue. *Id.* at 1017. Cell-site records demonstrated that Morales's cell phone and Blackberry device were in the proximity of that Ramada Inn at around 1 p.m. on January 4 before connecting to cell towers in New Jersey near the sites where police officers watched and then arrested Morales and Lugo.

Finally, the prosecution presented evidence that Morales was stopped by law enforcement in Texas in June 2000 while driving an SUV that had a similar compartment hidden by a trap door. At that time, Morales claimed that he had been paid to drive the car but that he did know anything about the compartment or its contents. From this evidence, the Southern District jury could infer that the second time Morales was caught in an SUV with a trap door was not a coincidence.

Morales argues that the government failed to satisfy its burden of proof because it never proved that he knew about the drugs in the car. In making this argument, however, Morales asks us to draw reasonable inferences in *his* favor, not the government's. That we cannot do in reviewing a judgment of conviction. *See Evans*, 504 U.S. at 257; *Heras*, 609 F.3d at 105. Morales's cell phone records indicate that he went with Lugo to pick up the drugs earlier that morning; that he was in unusually constant contact with Lugo during the prior two weeks; and that he lied to police after being arrested. Additionally, a police officer also testified that Morales was behaving suspiciously in the immediate proximity of the trap door—a type of concealment device with which he had previously been found. Viewed cumulatively, this evidence easily was sufficient for a rational trier of fact to find Morales guilty beyond a reasonable doubt.

## B.

Morales further argues that the District Court erred, or abused its discretion, by admitting evidence mentioned above that in June 2000 he was caught driving another SUV that had a trap door. Rule 404(b) of the Federal Rules of Evidence prohibits admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," but it does not prevent the government from offering evidence of prior acts "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[2] We have adopted an "inclusionary" approach to Rule 404(b) that "allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004).

> To determine whether a district court properly admitted other act evidence, the reviewing court considers whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant.

*Id.* We review a district court's evidentiary rulings for "abuse of discretion." *Id.* at 155. "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal citations, quotation marks, and alteration omitted).

The District Court did not abuse its discretion in admitting the evidence of the prior traffic stop as probative evidence regarding Morales's knowledge of the trap door and hidden compartment in the SUV. First, the government offered the evidence for a particular purpose—namely, to show that Morales likely knew about the trap door and was not merely an innocent bystander. Second, that issue was in dispute at trial.

Third, the District Court made a reasonable judgment that the probative value of this evidence was not substantially outweighed by its undue prejudicial effect. As Judge Cote explained, "the chain of inferences that the jury would have to use to draw a conclusion that in the year 2000 the defendant was well aware that drug money was hidden in the car's compartment is not a long chain of inferences and . . . [is the] most obvious conclusion," App'x 257, whereas "[t]he facts about the 2000 traffic stop and discovery of that drug money are no more sensational than [Morales's charged conduct]," *id.* at 258.

---

[2] Rule 404(b), quoted here as it read at the time of Morales's trial, has since been "restyl[ed]" with "no intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 404, advisory committee's note (2011).

Finally, the District Court gave a detailed limiting instruction to minimize any prejudicial effect from admitting that evidence.[3] *See United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions."). We apprehend no reason in this case to doubt the jury's adherence to the instruction.

Morales argues that admitting testimony about the events in 2000 was impermissible because he was not charged at that time, but whether a charge stemmed from the events is of no moment so long as the evidence is probative. *See United States v. Scott*, 677 F.3d 72, 78 & n.5 (2d Cir. 2012).

## C.

Lastly, Morales argues that the District Court erroneously denied his motion to hold an evidentiary hearing regarding an excused juror's interactions with an Assistant United States Attorney ("the AUSA") while the juror was still serving on the jury. The juror was having severe anxiety problems, apparently stemming in part from her recent miscarriage, and she asked a bystander near the courthouse—who happened to be an AUSA—what she should do. The AUSA, who did not recognize the juror or disclose his identity, instructed her to write a note to the presiding judge expressing her concerns and seeking guidance. Prior to learning of this communication, Judge Cote dismissed the juror because of her anxiety-related problems. Morales argues that he was entitled to a post-trial evidentiary hearing to inquire further into the interaction between the AUSA and the dismissed juror.

---

[3] The District Court instructed:

> Ladies and gentlemen, before we proceed I want to give you an instruction with respect to the testimony you just heard from this witness. I want to make sure you understand the defendant is not on trial for these events from the year 2000. So you can't consider this proof about these events in Texas from the year 2000 as a substitute for proof that the defendant committed the crimes with which he is charged in the indictment here and for which he is on trial. Nor may you consider this evidence about what happened in Texas as proof that he has a criminal personality or bad character.
>
> That's not why it's being offered and cannot be used by you for that purpose. This evidence has been offered and presented to you for your use in the following way and the following way only.
>
> You may consider this evidence about these events in Texas only to the extent you find it is helpful to you in deciding whether the defendant acted knowingly and intentionally with respect to the crimes with which he is charged and on trial here.
>
> For instance you may use it to consider if you find it helpful to do so that the defendant acted knowingly and intentionally with respect to the events with which he is charged in the indictment and not because of mistake or accident or some other similar innocent reason.
>
> Evidence of these events in Texas to the extent you find they occurred may not be considered by you for any other purpose. And once again, you can't use this other evidence about what happened in Texas to conclude that the defendant, if you find he did so, once drove a vehicle in which there was cash in a hidden compartment and therefore he must have committed the crimes charged in the indictment.

App'x 934–35.

6

We reject Morales's argument for substantially the reasons stated in the District Court's excellent opinion and order dated August 24, 2011. *See* App'x 1141–53. As Judge Cote explained, a district court is required to hold an evidentiary hearing only when "reasonable grounds for investigation exist." *United States v. Vitale*, 459 F.3d 190, 197 (2d Cir. 2006). For the reasons stated in Judge Cote's opinion, no such grounds are present here. The AUSA did not engage in any impropriety; indeed, he was not assigned to the case and had no idea of the juror's identity or the case on which she was sitting. The AUSA simply instructed the juror to submit a written note to the presiding judge expressing her concerns and seeking guidance. Once the identity of the juror later became apparent through discussions with his colleagues, the AUSA disclosed the interaction to Judge Cote. In short, there is no indication whatsoever that any impropriety occurred, and therefore Judge Cote did not err, or "abuse her discretion," in declining to hold an evidentiary hearing. Moreover, the defendant was not prejudiced by the communication because the juror's actions and representation to Judge Cote demonstrate that the juror should have been excused from the jury regardless of her feelings about the case. *See* App'x 1150 ("[T]his communication only further confirms that the decision to dismiss her from jury service was correct.").

## CONCLUSION

We have considered all of Morales's arguments on appeal and find them to be without merit. Accordingly, for the reasons stated above, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7