20-429-cr
*United States v. Djibo*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of March, two thousand twenty-one.

PRESENT:    ROBERT D. SACK,
            RICHARD C. WESLEY,
            STEVEN J. MENASHI,
                 *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

       *Appellee,*

   v.                                       No. 20-429-cr

ADAMOU DJIBO,

       *Defendant-Appellant.*

_____

*For Appellee*:                            PHILP N. PILMAR, Assistant United States Attorney (Kevin Trowel, Assistant United States Attorney, *on the brief*), *for* Seth D. DuCharme, United States Attorney for the Eastern District of New York, Brooklyn, NY.

*For Defendant-Appellant*:                 SARAH KUNSTLER, The Law Office of Sarah Kunstler, Brooklyn, NY.

Appeal from a judgment of the United States District Court for Eastern District of New York (Dearie, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Adamou Djibo appeals from a judgment of conviction entered by the United States District Court for the Eastern District of New York. Following a two-day trial, a jury convicted Djibo of conspiracy to import one kilogram or more of heroin into the United States, in violation of 21 U.S.C. §§ 952(a), 963, 960(a)(1), and 960(b)(1)(A), and aiding and abetting the importation of one kilogram or more of heroin into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(1)(A). The district court sentenced Djibo to 168 months' imprisonment on each count, to run concurrently, followed by five years of supervised release. On appeal, Djibo argues that the district court erred by

2

denying his motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29, that the district court erred by excluding messages between Djibo's co-conspirator and third parties from evidence, and that his sentence was procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I**

"[W]e review the grant or denial of a judgment of acquittal under Rule 29 *de novo.*" *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008). In so doing, we "apply the same standard as the district court applied in its review of the evidence." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* In making this assessment, "the court must view the evidence presented in the light most favorable to the government," and "[a]ll permissible inferences must be drawn in the government's favor." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). A court may therefore grant a defendant's Rule 29 motion "only 'if the evidence that

3

the defendant committed the crime alleged was nonexistent or … meager.'" *Jackson*, 335 F.3d at 180. Accordingly, "[a] defendant who challenges the sufficiency of the evidence to support his conviction 'bears a heavy burden.'" *Id.*

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *Id.* Rule 29 "does not provide the trial court with an opportunity to 'substitute its own determination of … the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" *Guadagna*, 183 F.3d at 129. "[I]t is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." *Jackson*, 335 F.3d at 180. "In fact, if the court 'concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter.'" *Guadagna*, 183 F.3d at 129 (alteration omitted). The deference traditionally afforded to the jury's verdict "is especially important when reviewing a conviction of conspiracy … because a conspiracy by its very nature is a secretive operation, and it is a rare case 'where all the aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'" *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992).

4

Applying these principles, we hold that the evidence was sufficient to support Djibo's convictions. At trial, the government adduced evidence from which the jury could conclude beyond a reasonable doubt that Djibo was guilty. That evidence included hundreds of WhatsApp messages and emails between Djibo and a co-conspirator, Stanley Walden, who was arrested on January 11, 2015, upon arrival at JFK International Airport with 6.5 kilograms of heroin secreted in his suitcase. The messages and emails showed that Djibo and Walden planned Walden's December 2014-January 2015 trip together, that Djibo booked Walden's flights, that Djibo gave Walden $1,000 in advance of the trip and agreed to pay him more upon his return, that Walden and Djibo remained in touch while Walden was abroad, that Djibo provided Walden with instructions on where to go and whom to meet during the trip, and that Djibo made arrangements to meet Walden when he arrived in the United States. The government's inculpatory evidence did not end there. As shown at trial, Djibo's and Walden's messages featured recurring, nonsensical references to "doctors," "surgery," and "hands," which the defense did not explain at trial and which the government argued was a code for narcotics. It was not irrational for the jury to credit the government's theory over Djibo's implausible suggestion that the messages had some undisclosed

exculpatory meaning. *See United States v. Huezo*, 546 F.3d 174, 182 (2d Cir. 2008) ("[J]urors are entitled, and routinely encouraged, to rely on their common sense and experience in drawing inferences.").

Djibo argues that because Walden did not testify at his trial and there was "no one to decode the text messages," the government had no "direct proof of Mr. Djibo's involvement" in the conspiracy and therefore "[n]o reasonable factfinder could have concluded *beyond a reasonable doubt* that Mr. Djibo was guilty." Appellant's Br. 29-30. But the government was not required to introduce "direct proof" of Djibo's involvement in the conspiracy to establish his guilt. *See United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014) ("The government may prove the defendant's knowing participation in a conspiracy through circumstantial evidence."). As recounted above, the evidence showed that Djibo arranged Walden's trip, paid him in advance of the trip and agreed to pay him more after, arranged to meet Walden when he arrived back in the United States, and communicated with Walden about the trip in a code, which betrayed Djibo's knowledge of the trip's unlawful purpose. This evidence was sufficient for the jury to infer Djibo's guilt as a conspirator and an aider and abettor. *See United States v. Heras*, 609 F.3d 101, 107 (2d Cir. 2010) ("When a person possessing … knowledge

6

[of a criminal objective] agrees to facilitate or actually facilitates the crime, a jury may reasonably infer from this combination of knowledge and action that the defendant has adopted the known goal of the crime as his own."); *see also Anderson*, 747 F.3d at 60 ("The government may prove the defendant's knowing participation in a conspiracy through … a defendant's association with conspirators in furtherance of the conspiracy, his presence at critical stages of the conspiracy that cannot be explained by happenstance, … [and] acts that exhibit a consciousness of guilt.") (internal citations and quotation marks omitted).

Djibo also argues that there was insufficient evidence to establish that he knew the kind or quantity of narcotics that Walden planned to import. To prove conspiracy, "the government must demonstrate that the defendant possessed 'the specific intent to commit the offenses that were its objects.'" *Anderson*, 747 F.3d at 61 (alteration omitted). Meeting this burden, however, does not require the government to establish that the defendant "knew all of the details of the crime" but only "that he 'joined the venture, that he shared in it, and that his efforts contributed towards its success.'" *Huezo*, 546 F.3d at 179-80 (quoting *United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006)) (alteration omitted). The government made this showing by establishing that Djibo furthered Walden's efforts to import

7

heroin into the United States by facilitating his trip with knowledge of its unlawful purpose. This is not a case in which the defendant's "passing involvement" in the conspiracy was "insufficient to demonstrate knowledge of the purpose of the conspiracy." *United States v. Bulgin*, 563 F. App'x 843, 845-46 (2d Cir. 2014). Rather, Djibo's "conduct and his relationship with his co-conspirator[] were sufficient to support a reasonable inference that [Djibo] knew that [Walden's] suitcase[] contained [heroin]." *Anderson*, 747 F.3d at 67. And Djibo and Walden's discussion of how many "hands" they would be "doing" on the trip—and particularly whether "three hands" would be "too much"—supports the inference that Djibo was aware of the quantity of heroin Walden intended to import. Government's App'x 72-73.

Viewing the evidence in the light most favorable to the government and drawing all permissible inferences in the government's favor, as we must, we conclude that the evidence was sufficient to support the jury's verdict.

**II**

Next, Djibo argues that the district court erred by excluding 373 messages between Walden and other co-conspirators from evidence. Before trial, there was extensive discussion between the parties and the court concerning whether the

8

messages were relevant and whether the messages constituted inadmissible hearsay. Djibo argues that the messages were not hearsay because he did not seek to admit the messages for their truth. *See* Fed. R. Evid. 801(c)(2). Djibo further argues that even if the messages were hearsay, the messages were nevertheless admissible under various hearsay exceptions.

Even if Djibo's arguments had merit, we would not reverse the district court because there is no adverse evidentiary ruling for us to review. The record shows that the district court did not issue a final ruling on admission of the messages. Instead, the court expressed skepticism about whether the messages were admissible, reserved decision on the matter, and invited Djibo to propose messages for admission, which the court said it would consider on a case-by-case basis. *See* App'x 459.12-13; Government's App'x 40-41, 47-48. Ultimately, Djibo sought to admit only two of the text messages, both of which were accepted into evidence. The court made no final ruling with respect to any of the other messages, which Djibo did not seek to admit at trial. Accordingly, there is no decision on the admissibility of those messages for us to review, let alone reverse.

Accepting *arguendo* Djibo's premise that the district court excluded the messages, we would still find no basis for reversal. A district court's evidentiary

9

rulings "are only reversed if they are manifestly erroneous such that the district court's decision on the admissibility of the evidence constitutes an abuse of discretion." *United States v. Louis*, 63 F. App'x 29, 30 (2d Cir. 2003). Moreover, district courts are "afforded wide latitude in their decisions to exclude evidence that poses an undue risk of … confusion of the issues." *Id.* Here, the court did not abuse its discretion by deciding to admit the messages only upon individuated review because many of the messages—even if admissible—were of marginal relevance and risked confusing the issues. For instance, Djibo claims that the messages were admissible to show that "Mr. Walden owned his own drugs" and "dealt with other couriers." Appellant's Br. 37. But the government was not required to prove—and did not try to prove—that Djibo "owned" the heroin Walden imported. Ownership is not an element of the crimes with which Djibo was charged. *See* 21 U.S.C. §§ 952(a), 963, 960(a)(1), 960(b)(1)(A). Similarly, evidence that Walden "dealt with other couriers" does not tend to disprove that Walden worked with Djibo. It would not have been an abuse of discretion for the court to exclude these messages on the grounds that the messages were irrelevant and risked confusing the issues.

10

Djibo also claims that some of the messages were relevant to his defense because the messages contained open discussions of drugs and smuggling, which Djibo argues show that he and Walden must have been speaking in code about something other than narcotics. *See* Appellant's Br. 37. While that inference would support Djibo's defense, the only message that Djibo sought to introduce at trial for that purpose was admitted and discussed by Djibo's lawyer at length in his summation. *See* App'x 729-32, 766-68. Thus, to the extent that this point was relevant to Djibo's defense, it was presented to the jury for its consideration.

Accordingly, even if the court's statements concerning the messages could be construed as an adverse ruling—which the statements were not—we would not reverse Djibo's convictions based on that ruling.

## III

Djibo also challenges the procedural and substantive reasonableness of his sentence. Neither challenge is meritorious.

Djibo first argues that his sentence was procedurally unreasonable because the two-level enhancement the court imposed for Djibo's role in the conspiracy was unwarranted. The role enhancement imposed by the district court applies "if the defendant was an organizer, leader, manager, or supervisor in any criminal

11

activity." U.S.S.G. § 3B1.1(c). Djibo argues that the enhancement was improper because "there was no evidence presented that Mr. Djibo managed or supervised 'a single other participant'" and that "[a]t most, Mr. Djibo and Mr. Walden were partners." Appellant's Br. 42.

These claims are belied by the record, which supports the inference that Walden worked for Djibo. First, Walden asked Djibo before the trip how many "hands" they would be "doing" on his trip, suggesting that Djibo was closer to their supplier than Walden and had more decisionmaking authority. Government's App'x 72-73. Second, Walden noted to Djibo before the trip that it was "our 7th anniversary since our first surgery" and asked Djibo to "upgrade($) a little bit bro." *Id.* at 73. That Walden requested a raise *from Djibo* undermines Djibo's claim that the two were equal partners. Third, Djibo played a role in organizing and managing the conspiracy by booking Walden's flights and fronting his travel expenses. Because there was sufficient evidence in the record to support the district court's conclusion that Djibo managed Walden, the district court's sentence enhancement based on Djibo's role in the conspiracy was reasonable.

Djibo also argues that his sentence was procedurally unreasonable because the district court improperly used the sentence from Djibo's first trial as "the

12

starting point and initial benchmark" for the sentence in his second trial. Appellant's Br. 43. This argument is based on a single stray comment from the district court noting that it was "aware of the sentence you received after your first trial" and that there were "reasons … to moderate that sentence." App'x 883. The district court's offhand statement that it saw reasons to "moderate" Djibo's initial sentence, however, does not indicate that the district court took Djibo's initial sentence as the "starting point and initial benchmark" for its sentence. To the contrary, the district court explicitly concluded that the Probation Office's Guidelines calculation of 188 to 235 months was accurate. *Id.* at 881. Using the Guidelines range as its starting point, the district court then considered Djibo's personal characteristics, the nature of the offense, and other mitigating factors Djibo identified. The district court decided that a sentence of 168 months' imprisonment was warranted—reflecting a downward variance of 20 months below the applicable Guidelines range. *Id.* at 881-83. The record thus reflects that the district court used the Guidelines range as its benchmark and then departed below the low end of the range in light of the mitigating factors that Djibo identified.

Finally, Djibo argues that the court's procedural errors rendered his sentence substantively unreasonable. Appellant's Br. 44-45. But as noted above, the district court did not commit procedural error. Moreover, "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011). It is accordingly "difficult to find that a below-Guidelines sentence is unreasonable." *Id.* Djibo provides no reason to conclude that his sentence, which was nearly two years shorter than the low-point of the Guidelines range, was substantively unreasonable, other than his erroneous claim that his sentence was not procedurally reasonable. *See* Appellant's Br. 44-45. There is therefore no reason to conclude that Djibo's below-Guidelines sentence was substantively unreasonable.

\* \* \*

We have considered Djibo's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14