10-2280-cr(L)
*United States v. Hector Rivera*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect.  Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1.  When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand fourteen.

PRESENT:

> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

>*Appellee,*

>-v.-                                                              Nos. 10-2280-cr(Lead)
>                                                                            12-4005-cr(con)

HECTOR RIVERA,

>*Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | JAMES M. BRANDEN, Law Office of James M. Branden, New York, NY. |
| **FOR APPELLEE:** | MARGARET GARNETT (Justin S. Weddle *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY. |

1

Appeal from the May 25, 2010 judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the May 25, 2010 judgment of the District Court be **AFFIRMED**.[1]

Defendant Hector Rivera appeals a May 25, 2010 judgment convicting him, after a nine-day jury trial, on all six counts charged against him in the Indictment. Rivera was sentenced principally to a term of imprisonment of 384 months and one day. On appeal, Rivera challenges: (1) the sufficiency of the evidence used to convict him on Counts Three and Five for aiding and abetting the use of a firearm in connection with two Hobbs Act robberies, in violation of 18 U.S.C. § 924(c) and 2; (2) the decision of the District Court to disqualify his chosen counsel, over his objection, based on the existence of potential conflicts; (3) the decision of the District Court to excuse a juror after having an *ex parte* conversation with the juror at the request of the parties, but without further discussing the issue with the parties; and (4) the imposition of a seven-year mandatory minimum sentence on Count Three for "brandishing" a firearm, where the jury did not make a specific finding that the firearm was "brandished." We assume familiarity with the factual and procedural history of the case, and repeat only those details necessary to resolution of this appeal.

## BACKGROUND

The charges against Rivera were based on his alleged leadership of a crew responsible for committing a series of crimes, mainly robberies, between 2002 and 2008. Count One charged conspiracy to commit robbery and extortion from 2002 to December 2008, in violation of 18 U.S.C. § 1951. Count Two charged a November 2005 robbery of a diamond and jewelry business in the Diamond District called Doppelt & Greenwald ("D&G"), in violation of 18 U.S.C. § 1951 and 2. Count Four charged a December 2007 hijacking and robbery of a Federal Express ("Fed-Ex") tractor-trailer, in violation of 18 U.S.C. § 1951 and 2. Counts Three and Five charged use, carrying, and possession of a firearm, which was brandished, and aiding and abetting that use, in connection with the robberies charged in Count Two and Four respectively, in violation of 18 U.S.C. § 924(c) and 2. Count Six charged a December 2008 attempted hijacking and robbery at gunpoint of a Fed-Ex tractor-trailer in violation of 18 U.S.C. § 1951 and 2.

Rivera initially retained Stacey Richman to represent him. The Government requested a *Curcio* hearing based on potential conflicts arising out of her representation of Rivera.[2] Specifically,

---

[1] Rivera also appealed Judge Baer's order denying his request for changes to the trial transcript, and that appeal was docketed No. 12-4005. Neither his counseled brief nor his *pro se* submission address this issue. Accordingly, we find that that appeal has been abandoned.

[2] The purpose of a so-called *Curcio* hearing is "to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation" and requires a district court to "(1) advise the defendant about potential conflicts; (2) determine whether the defendant understands the risks of those conflicts; and (3) give the

Stacey shared office space, including stationery and a fax machine, with her father, Murray Richman, who represented one of Rivera's co-defendants, Brian Greenwald. In addition, Stacey had previously represented two other co-defendants, Roni Amrussi and Arkadiy Israilov.

Judge Baer held a *Curcio* hearing during which he questioned the Government, Stacey, Rivera's (separate) assigned counsel for the *Curcio* hearing, and Rivera himself. The Government declined to disclose whether Greenwald, Amrussi or Israilov would act as cooperating witnesses, but left open that possibility. Rivera represented that he understood the potential conflicts but wished to proceed with Stacey as his lawyer. After granting a week's continuance, the District Court ruled that the conflicts were not waivable and disqualified Stacey Richman from representing Rivera. In particular, Judge Baer found that Stacey's ethical obligations to her former clients, who were potential cooperators, "creates a risk that I cannot allow Mr. Rivera to take." App'x 96. The fact that she practiced law in the same office as her father, who represented another co-defendant, was "just an additional way in which Ms. Richman's ability to effectively represent Mr. Rivera might be impaired by her ethical obligations." *Id.*

Trial began on December 2, 2009. On Thursday, December 3, Juror No. 10 informed the District Court and counsel that he had a "family situation that's heavily on [his] mind [and] . . . . keeping [him] a bit unfocused." App'x 124. Outside the presence of the juror, Judge Baer informed the parties that he had learned that the juror had found out the night before that his girlfriend was pregnant. The Government wanted to keep the juror at least over the weekend. Defense counsel requested that the court "examine him with my consent and my client's consent" to create a better record of the issues. App'x 126. Judge Baer agreed to talk to Juror No. 10. On Monday morning, December 7, Judge Baer announced that Juror No. 10 had been dismissed. The Government asked the court to state on the record the reasons for the discharge. Judge Baer explained that he had spoken with the juror at the parties' "mutual behest" and told the juror that they would revisit the issue on Monday. App'x 130. On Monday, the juror phoned the court to say that he had too many competing obligations, including taking his girlfriend to the doctor that day. He asked to be excused and Judge Baer agreed. After hearing this, defense counsel stated "I will indicate on the record what your Honor has stated about what the defendant agreed to is correct." App'x 131.

At trial the Government presented testimony of four cooperating witnesses, law enforcement agents, civilian witnesses, as well as court-authorized recordings and wiretaps, and physical evidence. The defense presented no witnesses. On December 14, the jury returned its verdict finding Rivera guilty on all six counts. On May 20, 2010, Rivera was sentenced principally to imprisonment of one day each on Counts One, Two, Four and Six, to run concurrently, followed by

---

defendant time to digest and contemplate the risks, with the aid of independent counsel if desired." *United States v. Kliti*, 156 F.3d 150, 153 & n.4 (2d Cir. 1998) (citing *United States v. Curcio,* 680 F.2d 881, 888-90 (2d Cir. 1982)).

3

a mandatory minimum sentence of seven years on Count Three and twenty-five years on Count Five, to run consecutively, for a total term of 384 months and one day.

## DISCUSSION

### A. Sufficiency of the Evidence

Rivera argues that there was insufficient evidence to convict him on Counts Three and Five for aiding and abetting the use of a firearm in connection with two Hobbs Act robberies in violation of 18 U.S.C. § 924(c) and 2.[3] We review *de novo* the denial of a request for a judgment of acquittal pursuant to Fed. R. Crim. P. 29.[4] *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010) (citations omitted). On appeal "a reviewing court must sustain the jury's guilty verdict if 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)).

Rivera was convicted of aiding and abetting the "use" of a firearm in connection with two robberies. The term "use" includes "brandishing" defined as displaying or otherwise making the presence of the firearm known "in order to intimidate [a] person". 18 U.S.C. § 924(c)(4). A person is liable for aiding and abetting a crime if "he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014). The Supreme Court recently held that a defendant may "assist in § 924(c)'s violation by facilitating either the [underlying violation] or the firearm use (or of course both)."[5] *Id.* at 1247.

There is ample evidence on which a jury could convict Rivera on Counts Three and Five. The evidence overwhelmingly shows that firearms were brandished in connection with both robberies. On Count Three, cooperating witnesses Salvador Ramos and Hector Matthews testified that it was Rivera's idea to rob D&G. Ramos testified that he met with Rivera "several times" to discuss the robbery of D&G, *and* that it was Rivera's idea to use an unloaded firearm during the robbery. There was also testimony that Rivera instructed Matthews about when and where to retrieve the gun, which Matthews passed along to Ramos.

---

[3] Section 924(c) provides, in relevant part: "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years." 18 U.S.C. § 924(c)(1)(A)(ii). Section 2 provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).

[4] Rivera moved pursuant to Rule 29 for a judgment of acquittal, which the District Court denied.

[5] This holding expanded aiding and abetting liability under Section 924(c) as previously recognized by this Court, which required an act in furtherance of the use of the firearm, not merely the underlying offense. *See e.g.*, *United States v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994).

On Count Five, evidence was presented that Rivera assembled the members of the crew for the 2007 robbery of the Fed-Ex vehicle at gunpoint, chose the date of the robbery and directed it. Even defense counsel concedes that "the evidence suggested that Mr. Rivera had some role in recruiting the Russians, who, according to numerous witnesses, used firearms in the robbery." In light of the foregoing, under any standard, but particularly under the Supreme Court's recently articulated standard for aiding and abetting liability, there was sufficient evidence for a jury to convict Rivera on Counts Three and Five.[6]

## B. Disqualification of Counsel

A district court's decision to disqualify an attorney is accorded "'substantial latitude'" and is reviewed only for "abuse of discretion." *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993) (quoting *Wheat v. United States*, 486 U.S. 153, 163-64 (1988)). The Sixth Amendment guarantees a right to "representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citations omitted). It also guarantees, with some limitations, a right to counsel of one's choosing. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006). Where these rights are in tension, the district court must weigh the competing rights, bearing in mind the Supreme Court's admonition that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. If, upon investigation, a district court determines that there is an actual or potential conflict of interest, it must determine, in a *Curcio* hearing, whether the conflict requires disqualification of the attorney or whether the conflict can be waived by the defendant. *See United States v. Kliti*, 156 F.3d 150, 153 (2d Cir. 1998). Courts must also consider the "interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." *Locascio*, 6 F.3d at 931. A court is not required to accept a defendants' waiver of his lawyer's conflict of interest at the expense of these interests. *United States v. Arrington*, 867 F.2d 122, 128-29 (2d Cir. 1989).

Stacey Richman's representation of Rivera implicates several ethical "red flags": a parent and a child representing co-defendants; two members of the same firm representing co-defendants; and an attorney's prior representation of co-defendants and cooperating witnesses in the current case. *See* N.Y. Rules of Professional Conduct 1.10(h), 1.7, 1.9. The District Court properly exercised its judgment in concluding that the potential conflicts—particularly Stacey's prior representation of co-defendants and potential cooperating witnesses—were sufficiently likely to materialize[7] and,

---

[6] An additional basis on which the jury was instructed that it could find Rivera guilty of a Section 924(c) offense was *Pinkerton* liability, which permits one conspirator to be found guilty of substantive offenses committed by his co-conspirators in furtherance of the conspiracy. *See Pinkerton v. United* States, 328 U.S. 640 (1946). Because we affirm the judgment on the basis of aiding and abetting, we need not reach the alternative *Pinkerton* theory of liability.

[7] Indeed, some or all of the codefendants whom Stacey Richman had previously represented ended up cooperating with the Government in the case against Rivera, although they did not end up testifying at trial.

5

combined with the apparent conflict arising from her sharing an office with her father, necessitated disqualifying Stacey Richman. *See United States v. Cain*, 671 F.3d 271, 294 (2d Cir. 2012) ("Given the difficulties . . . [and] the uncertainties involved where the conflict has yet to fully materialize . . . the evaluation of whether the facts and circumstances of a particular case evince a conflict so serious as to be unwaivable is a discretionary one that is best left primarily to the informed judgment of the trial court.") (internal citations and quotation marks omitted). Accordingly, disqualifying Stacey Richman was not in any sense error, much less an "abuse of discretion."[8]

## C. Dismissal of Juror Number 10

Rivera challenges the decision of the District Court to dismiss Juror No. 10 after an *ex parte* conversation with the juror, conducted at the behest of defense counsel, but before consulting again with the parties. It is well-established that "[d]iscretion . . . is vested in the district court to remove a juror when the facts reveal that the juror's ability to perform her duties are impaired." *United States v. Gambino*, 951 F.2d 498, 502 (2d Cir. 1991). *See also* Fed. R. Crim. P. 24(c) (authorizing judges to "replace jurors who are unable to perform or who are disqualified from performing their duties"). The District Court conducted the requisite "informed discussion (with counsel) on the proper course to follow," *United States v. Taylor*, 562 F.2d 1345, 1366 (2d Cir. 1977) (citations omitted), and complied with defense counsel's request to discuss the issue further with the juror *ex parte*, which the defense acknowledged after the juror was dismissed. Moreover, even if we found that reasonable cause to dismiss Juror No. 10 was lacking, the dismissal of a juror "will be set aside only where the prejudice to a defendant is shown to be manifest." *Mikus v. United States*, 433 F.2d 719, 723 (2d Cir. 1970) (internal citations and quotation marks omitted). Rivera has not demonstrated any way in which he was prejudiced by the dismissal of Juror No. 10. Accordingly, we affirm the decision of the District Court to dismiss this juror.

## D. Seven-Year Sentence on Count Three for Brandishing

Rivera challenges the imposition of a seven-year mandatory minimum sentence for his conviction on Count Three for aiding and abetting the use or carriage of a firearm during a violent offense, in violation of 18 U.S.C. § 924(c), based on the finding of the District Court that the firearm was "brandished" during commission of the offense. Rivera argues that, under the Supreme Court's recent decision in *Alleyne v. United States*, "because the fact of brandishing [under Section 924(c)] aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury." 133 S.Ct. 2151, 2162 (2013). Because the jury did not make a specific finding as to brandishing, Rivera contends, the mandatory minimum sentence should have been five years.

---

[8] Rivera's argument that Stacey "was already deeply involved in the case," rendering Rivera's interests in retaining her particularly strong, Appellant's Br. 33, does not counsel otherwise. Pre-trial motions had not yet been filed and there is no indication in the record that Stacey Richman had devoted significant resources to the case.

On Count Three, Judge Baer instructed the jury that the Indictment charged that Rivera "did use and carry a firearm and in furtherance of [the crime charged in Count Two] did possess a firearm and did aid and abet the use, carrying and possession of the firearm *which was brandished* during the robbery . . . ." App'x 133 (emphasis supplied). The jury was further instructed that the Government was required to prove use, carriage or possession of the firearm during or in relation to the robbery, and that brandishing was one type of "use." App'x 135. Neither party requested that the jury be asked to make a specific finding with respect to brandishing, and the jury was not so instructed.[9]

Rivera did not object to being sentenced based on a judicial finding that should have been made by a jury and, accordingly, we review the sentence for plain error. *See United States v. Joyner*, 313 F.3d 40, 45 (2d Cir. 2002) (citing *United States v. Thomas*, 274 F.3d 655, 660 (2d Cir. 2001)). The parties do not dispute that, under *Alleyne*, it was error for the District Court to impose a seven-year mandatory minimum sentence based on a finding that the weapon in question was "brandished" when the jury did not make an express finding to that effect. The first three conditions of plain error—"(1) error, (2) that is plain, and (3) that affects substantial rights,"—are met where, as here, failure to submit a question to the jury results in a higher sentence. An appellate court may only remedy such error, however, if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Joyner*, 313 F.3d at 45 (quoting *Johnson v. United States,* 520 U.S. 461, 467 (1997) (alterations omitted)). This fourth element is not satisfied where "there is no disagreement as to the truth of the pertinent facts, and the record as a whole casts no doubt on the accuracy of that fact." *Id.* at 46 (internal citation, quotation marks and alternation omitted).

As discussed in Part A, *supra*, Rivera points to no evidence casting doubt on the testimony of the individual who carried out the robbery (Ramos) that he was instructed (by Rivera and Mathews) to "use a gun" while carrying out the robbery of D&G, and that he did so. Because the evidence was "overwhelming and essentially uncontroverted" *United States v. Cotton*, 535 U.S. 625, 633 (2002) (internal quotation marks omitted), we conclude that the error did not affect the fairness, integrity, or reputation of the proceedings.

---

[9] At the time of sentencing, the question of whether the firearm was brandished, thus increasing the mandatory minimum sentence to seven years, could be decided by the judge. *See Harris v. United States*, 536 U.S. 545 (2002). The Supreme Court overturned this holding in *Alleyne*, 131 S. Ct. at 2155, 2163.

**CONCLUSION**

We have considered the arguments in Rivera's *pro se* and counseled briefs, and find them to be without merit. For the reasons set out above we **AFFIRM** the May 25, 2010 judgment of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court